## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 10 B 50562 |
| | ) | Chapter 7 |
| Craig Lyle Campbell and Kim Ann | ) | Judge Donald R. Cassling |
| Webster-Campbell, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| David E. Grochocinski, trustee of | ) | |
| the Chapter 7 bankruptcy estate of | ) | |
| Craig Lyle Campbell and Kim Ann | ) | |
| Webster-Campbell, | ) | Adversary No. 11 A 01897 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Craig Lyle Campbell and Kim Ann | ) | |
| Webster-Campbell, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the Debtors' Motion to Dismiss the First Amended Complaint to Deny Discharge and to Surcharge Exemptions (the "Motion to Dismiss") under Federal Rule of Civil Procedure 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012(b)). For the reasons stated herein, the Court grants in part and denies in part the Motion to Dismiss. Portions of Count I, all of Count II, portions of Count III, and all of Count V are dismissed without prejudice and the Motion to Dismiss is otherwise denied. The Trustee is given leave to file a second amended complaint on or before August 10, 2012. This adversary proceeding is set for a status hearing on August 24, 2012 at 10:00 a.m.

## I. JURSIDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (J), and (O).

## II. BACKGROUND

On November 11, 2010 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On September 15, 2011, David E. Grochocinski, the Chapter 7 trustee of the bankruptcy estate of the Debtors (the "Trustee"), filed a complaint against the Debtors, which he amended on December 22, 2011 (the "Amended Complaint"). In the Amended Complaint, the Trustee asserts four counts objecting to the Debtors' discharge under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(4)(A) and 727(a)(6)(A),[1] and a fifth count seeking to impose a surcharge on the Debtors' exemptions.

Under Count I of the Amended Complaint, the Trustee asserts that the Debtors' discharge should be denied under § 727(a)(2)(A), based upon: (1) Debtor Craig Campbell's conduct as a former director and officer of various banks; (2) the Debtors' alleged evasion of service of citations to discover assets in certain state court actions; (3) the Debtors' removal of assets from their joint accounts; (4) the Debtors' payment of personal expenses through accounts under other names; (5) Debtor Craig Campbell's closing of bank accounts of certain limited liability companies of which the Debtors were members; and (6) the Debtors' pre-petition depletion of assets of Campbell Income Fund, L.P.

Count II of the Amended Complaint seeks denial of the Debtors' discharge under § 727(a)(2)(B), based upon the Debtors' post-petition use of estate funds to trade in certain risky

---

[1] On April 24, 2012, the Trustee voluntarily dismissed Count IV of the Amended Complaint, objecting to discharge under § 727(a)(6)(A). The Court will not further address this count.

securities. The Amended Complaint alleges that the Debtors thereby depleted the value of the estate's interest in several of the Debtor's entities with an intent to hinder, delay, or defraud creditors after the Petition Date.

Count III of the Amended Complaint alleges that the Debtors knowingly and fraudulently made a false oath or account in connection with the case in violation of § 727(a)(4)(A) when they knowingly undervalued certain real and personal property and closed certain limited liability company bank accounts that were controlled by one or both of the Debtors.

Finally, under Count V, the Trustee alleges that the Debtors' exempt assets should be surcharged to the extent of losses incurred from the post-petition transactions described in Count II.

## III. APPLICABLE STANDARDS

"A motion under Rule 12(b) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2) (made applicable by Fed. R. Bankr. P. 7008(a)).

However, as the Supreme Court has made clear, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted); *see also Ashcroft v. Iqbal*, 556

U.S. 662, 677-78 (2009). Thus, the complaint must contain enough factual detail to give the defendant "fair notice" of the claim under Rule 8(a), and the allegations must plausibly suggest that the plaintiff has a right to relief, raising that right above the "'speculative level.'" *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *Hofer*, 649 F.3d at 614.

When one alleges fraud, as the Trustee has done by invoking §§ 727(a)(2)(A), (a)(2)(B), and (a)(4)(A), additional rules apply. Specifically, in addition to the pleading rules described above, "the circumstances constituting fraud" must be stated "with particularity."[2] Fed. R. Civ. P. 9(b) (made applicable by Fed. R. Bankr. P. 7009). Stating particularity under Rule 9(b) requires alleging the "who, what, when, where, and how of the fraud–the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (internal quotations omitted).

The Debtors implicitly ask the Court to ignore these pleading standards when they argue that objections to discharge under § 727 should be liberally construed in favor of debtors and strictly against objectors because there is a strong policy of providing debtors with a fresh start.[3] Applying that fresh-start policy, the Debtors argue that the Amended Complaint "fall[s] woefully short of stating claims for relief and should be dismissed." (Reply in Supp. of Mot. to Dismiss at p. 2.) But the Debtors are urging the Court to apply a decision standard applicable to a trial on the merits, a stage this proceeding has not reached. At the pleading stage of the proceedings, the

---

[2] Rule 9(b) specifically excludes allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind" from this heightened standard. Fed. R. Civ. P. 9(b).

[3] *See Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011) (noting that exceptions to discharge are to be construed strictly against the creditor and liberally in favor of the debtor); *Vill. of San Jose v. McWilliams (In re McWilliams)*, 284 F.3d 785, 790 (7th Cir. 2002) (stating that the discharge provided by the Bankruptcy Code is meant to effectuate the fresh start goal of bankruptcy relief).

Court is not obliged to construe the allegations in the Amended Complaint in favor of the

Debtors. Rather, the Court's task is simply to determine whether the Amended Complaint

contains enough factual detail to give the Debtors fair notice of the claims against them and

whether the allegations plausibly suggest that the Trustee has a right to relief. It is that standard

that the Court applies here.

## IV. DISCUSSION

### A. Preliminary Issue–Did the Acts Complained of Involve Property of the Estate?

The Debtors first attack Counts I, II, and III on the ground that many of the acts

complained of by the Trustee did not involve property of the estate and therefore cannot support

objections to discharge under § 727. Specifically, the Debtors argue that they own only equity

interests in various limited liability companies and a limited partnership described by the Trustee

in the Amended Complaint, and that the Debtors' transactions with the property of those entities

cannot be fraudulent as to the estate's creditors because those entities and their assets are not

property of the Debtors' estate. (Mot. to Dismiss at ¶ 10.)

The Trustee disagrees, claiming that the Debtors' ownership interests in these entities are

themselves property of the bankruptcy estate. The Amended Complaint alleges[4] (and the Court

must accept as true for purposes of this motion) that:

1. Each Debtor is a fifty percent member of OPAR, a manager-managed limited liability company ("OPAR"). (Am. Compl. at ¶¶ 16-18 & Ex. B.) Debtor Craig Campbell is the manager of OPAR. (*Id.* at ¶ 17.)
2. OPAR, in turn, is the one-hundred percent member of Campbell Fixed Income Fund, LLC, Campbell Capital Management, LLC, and Campbell Capital Advisors, LLC, all of which are member-managed. (*Id.* at ¶¶ 23-28.)
3. Campbell Capital Management, LLC is the general partner of Campbell Income Fund, L.P. (*Id.* at ¶ 29.)
4. Prior to the Petition Date, the Debtors owned seventy-seven percent of the limited

---

[4] Neither the Trustee nor the Debtors has provided the Court any operating agreements or partnership agreements related to the Debtors and these various entities. Thus, the discussion in this Opinion regarding those entities is based solely upon the allegations in the Amended Complaint.

partnership interests in Campbell Income Fund, L.P. (*Id.* at ¶ 30.)  The remaining twenty-three percent of the limited partnership interest is owned by a third-party minority partner. (*Id.* at ¶ 31.)

This chain of ownership is summarized in the following chart, derived from Ex. B to the Amended Complaint:



According to the Trustee, this chain of ownership enabled the Debtors, and now enables the Trustee as their successor in interest, to exercise all of the Debtors' economic and non-economic rights in and to these entities, including the rights to dissolve, wind-up, and liquidate them. (Resp. to Mot. to Dismiss at pp. 9-10.)  In the Trustee's analysis, that power transforms these entities and their assets into property of this estate.

In response, the Debtors argue that even if their property rights as members of OPAR passed to the estate, the powers and responsibilities of the *manager* of OPAR (Debtor, Craig Campbell) did *not* pass to the estate because those powers and responsibilities are not interests in

property. (Reply in Supp. of Mot. to Dismiss at p. 9.) For the reasons that follow, the Court agrees with the Debtors that the powers and responsibilities of the *manager* of OPAR are not property of the estate. Therefore, OPAR's ownership interests in Campbell Fixed Income Fund, LLC, Campbell Capital Management, LLC, and Campbell Capital Advisors, LLC, and Campbell Capital Management, LLC's interest in Campbell Income Fund, L.P. did not automatically become property of the bankruptcy estate on the Petition Date.

At first glance, this might seem an odd result, given that the Bankruptcy Code provides that "[t]he commencement of a case . . . creates an estate . . . [that] is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts have broadly construed this provision, noting that "every conceivable [property] interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993).

However, while § 541(c) preempts state law as to the types of property interests that may be transferred to the bankruptcy estate,[5] state law "governs the determination of the nature and scope of the property interests that comprise the 'property of the estate' in bankruptcy . . . ." *U.S. Bank N.A. v. United Airlines, Inc. (In re United Airlines, Inc.)*, 438 F.3d 720, 736 (7th Cir. 2006) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)).

The Illinois Limited Liability Act (the "LLC Act") explains the procedure for appointing and removing managers in manager-managed limited liability companies. "In a manager-managed company . . . (3) a manager: (A) must be designated, appointed, elected, removed, or

---

[5] *LaHood v. Covey (In re LaHood)*, 437 B.R. 330, 335-37 (C.D. Ill. 2010) ("That section of the Bankruptcy Code also 'makes plain that no restriction on the transfer of any interest of a debtor—whether it arises from the operative documents themselves or from applicable nonbankruptcy law—prevents an interest from becoming property of the estate.'" (quoting *In re Garrison-Ashburn, L.C.*, 253 B.R. 700, 707-08 (Bankr. E.D. Va. 2000))); *see also Klingerman v. Parker (In re Klingerman)*, 388 B.R. 677, 678–79 (Bankr. E.D.N.C. 2008); *Movitz v. Fiesta Invs. LLC (In re Ehmann)*, 319 B.R. 200, 206 (Bankr. D. Ariz. 2005); *In re Daugherty Constr., Inc.*, 188 B.R. 607, 611 (Bankr. D. Neb. 1995)).

replaced by a vote, approval or consent of a majority of the members; and (B) holds office until a

successor has been elected and qualified, unless the manager sooner resigns or is removed." 805

Ill. Comp. Stat. 180/15-1(b) (2012). The ability to be a manager of a manager-managed LLC is

therefore not a property interest that can be transferred.[6] Thus, unless and until the Trustee,

acting as sole member of OPAR, removes and replaces Craig Campbell as its manager,[7] Craig

Campbell individually retains that role even after filing this bankruptcy petition.

The LLC Act further provides that "[a] member is not a co-owner of, and has no

transferable interest in, property of a limited liability company." 805 Ill. Comp. Stat. 180/30-

1(a). In short, while the Debtors' membership interests in OPAR became property of their

bankruptcy estate, the LLC Act clearly leads to the conclusion that the LLC's assets are not

property of the LLC's owner. Thus, any property owned by OPAR, including the subsidiary

LLCs, did not automatically become property of the estate, and the Trustee has not yet taken the

actions necessary under Illinois law to bring that property into this estate. For the same reasons,

property of the Debtors' real estate LLCs has not automatically become property of the estate,

although their organization as member-managed LLCs would make it easier for the Trustee to

reach that property.

Because of the nature of the property interests as established by the LLC Act, it is

important to distinguish between the Debtors' personal accounts, which are property of the

estate, and the Debtors' companies' accounts, which, at least at this stage of the proceedings, are

---

[6] By contrast, in the case of a *member*-managed LLC, the debtor's management responsibilities *would* constitute a property interest that would transfer to the estate under § 541. 805 Ill. Comp. Stat. 180/15-1 ("(1) each member has equal rights in the management and conduct of the company's business; and (2) . . . any matter relating to the business of the company may be decided by a majority of the members.").

[7] In order to distribute the assets of the LLC to the estate, the Trustee would have to dissolve and wind-up the LLC in accordance with the LLC Act and the LLC's operating agreement, while ensuring that obligations to the LLC's creditors are fulfilled. 805 Ill. Comp. Stat. 180/35-1, -4, & -10. In the case of a manager-managed LLC, in order to make management decisions pertaining to winding-up of the LLC and distribution of assets, the Trustee must take the preliminary step of replacing the manager of the LLC pursuant to § 15/1(b) of the LLC Act.

not. The Debtors' personal accounts that are property of the estate and subject to the limitations of § 727(a)(2) include:

1. RBC account -6574;
2. Crews account -3433;
3. Simmons accounts -6608 and -3749; and
4. Midwest account -2101.

The Debtors' companies' accounts that are not property of the Debtors or the their estate and therefore do not fall under § 727(a)(2) include:

1. RBC accounts -7710, -3672, and -6573;
2. First Financial Bank accounts -5038, -7196, -7024, -6317, -6309, -6291, -7188, and -5830;
3. Simmons Account -0154;
4. First Tennessee accounts -8176 and -9844; and
5. First National Bank of Danville account -7188.

The Court now turns to the sufficiency of the allegations of each specific Count of the Amended Complaint.

**B.    Count I—11 U.S.C. § 727(a)(2)(A)**

In their Motion to Dismiss, the Debtors argue that Count I of the Amended Complaint fails to state a claim for the denial of discharge under § 727(a)(2)(A). Under § 727(a)(2)(A), an objection to discharge will be sustained if the objecting party alleges and proves the following elements: (1) the debtor transferred, removed, destroyed, mutilated, or concealed property; (2) belonging to the estate; (3) within one year of filing the petition; (4) with the intent to hinder, delay, or defraud a creditor of the estate. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd*, 540 U.S. 443 (2004); *Saluja v. Mantra (In re Mantra)*, 314 B.R. 723, 729 (Bankr. N.D. Ill. 2004); *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003). A proper objection to discharge under § 727(a)(2)(A) "consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to

hinder, delay, or defraud a creditor)." *Kontrick*, 295 F.3d at 736 (quoting *Rosen v. Bezner*, 996

F.2d 1527, 1531 (3d Cir. 1993)); *see also Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re*

*Holstein)*, 299 B.R. 211, 226-27 (Bankr. N.D. Ill. 2003), *aff'd*, No. 03 C 8023, 2004 WL

2075442 (N.D. Ill. Aug. 31, 2004). Both elements must have been present during the year before

bankruptcy; anything occurring earlier is "'forgiven.'" *Kontrick*, 295 F.3d at 736 (quoting

*Rosen*, 996 F.2d at 1531).

The Amended Complaint alleges that, following significant financial setbacks in 2009,

the Debtors withdrew assets from joint accounts in their individual names and did so with the

intent to hinder, delay, or defraud creditors, as demonstrated by the following alleged facts: (1)

the Debtors withdrew funds from their joint bank accounts that should have gone to pay creditors

(Am. Compl. at ¶¶ 104-118); (2) they used funds from various limited liability companies and a

limited partnership to pay their personal expenses (*id.* at ¶¶ 119-132); (3) they closed bank

accounts belonging to certain of the Debtors' limited liability companies and a limited

partnership (*id.* at ¶¶ 133-153); (4) they directed transfers of funds that diminished the value of

the bankruptcy estate (*id.* at ¶¶ 154-168); and (5) they evaded service of process of certain

citations to discover their assets (*id.* at ¶¶ 92-103). As discussed below, the Court concludes that

some of these activities do support a cause of action under § 727(a)(2)(A), while others do not.

The Court addresses each in turn.

### 1. The Debtors' Bank Account Activity

### a. RBC Account -6574 and Crews Account -3433 Withdrawals

First, the Amended Complaint alleges that between February 1, 2009 and August 4, 2009,

the Debtors withdrew monies in excess of $768,000 from an RBC Wealth Management Account

-6574 ("RBC Account -6574"), which was held by the Debtors in joint tenancy under their

individual names. (Am. Compl. at ¶¶ 105-109.) In addition, the Debtors withdrew funds in the
amount of $52,785.57 from a Crews & Associates, Inc. brokerage account titled in their
individual names ("Crews Account -3433") between June 30, 2009 and September 15, 2009. (*Id.*
at ¶¶ 111-113.) The Debtors do not dispute the facts alleged, but they argue that these facts
cannot support a claim under § 727(a)(2)(A) because these transfers took place more than one
year prior to the Petition Date.

With respect to these bank withdrawals, the Trustee does not dispute that they took place
more than a year prior to the bankruptcy filing. Nonetheless, he argues that he may still rely
upon them in asserting his § 727(a)(2)(A) claim under the doctrine of "continuing concealment."
This Court disagrees.

The "continuing concealment" doctrine permits denial of discharge when a debtor
fraudulently transfers or conceals property more than a year before the petition date and thereby
causes the property to remain hidden from creditors within the one-year look-back period.
*Holstein*, 299 B.R. at 231 (citing *Rosen*, 966 F.2d at 1531). Further, the debtor must maintain his
fraudulent intent within the year prior to filing. *Rosen*, 966 F.2d at 1533.

A continuing concealment can take the form of "failing or refusing to divulge
information to which creditors were entitled." *Holstein*, 299 B.R. at 229; *see also Peterson v.
Scott (In re Scott)*, 172 F.3d 959, 967 (7th Cir. 1999) (stating that concealment includes
"preventing discovery, or fraudulently transferring or withholding knowledge or information
required by law to be made known."). Continuing concealment can also occur "when the debtor
transfers legal title to property outside the one year period, but retains a beneficial or equitable
interest in the property into the one year period[.]" *Penner v. Penner (In re Penner)*, 107 B.R.
171, 175 (Bankr. N.D. Ind. 1989) (quoting *In re Howard*, 55 B.R. 580, 584, (Bankr. E.D.N.C.

1985)); *see Holstein*, 299 B.R. at 229.

The fatal defect in the Trustee's "continuing concealment" theory is that he has alleged no facts from which the Court could infer that the Debtors concealed any assets or withheld information concerning transfers that occurred more than one year before the Petition Date. The Court therefore agrees with the Debtors that the transfers alleged in Count I fall outside the one-year look-back period and cannot support an objection to discharge under § 727(a)(2)(A).

### b. Simmons Accounts -6608 and -3749 Withdrawals

The Amended Complaint also alleges that the Debtors withdrew substantially all of the cash held in two Simmons First Investment Group of Little Rock, Arkansas, bank accounts ("Simmons Account -6608" and "Simmons Account -3749"). On September 7, 2010, the Debtors received a distribution in the amount of $112.91 from Simmons Account -6608 (Am. Compl. at ¶ 115), and on January 7, 2010, they received a distribution in the amount of $1,215.24 from Simmons Account -3749. (*Id.* at ¶ 117.) As the Debtors point out and the Trustee concedes, these are the only bank withdrawals that took place within one year of the Petition Date. The Debtors contend that because the amount of cash received totaled only $1,325.00, it is "ludicrous" to suggest that such a minimal amount was part of a scheme to cheat creditors. (Mot. to Dismiss at ¶ 9.) That is, the Debtors contend that the transfers of such a small amount of money could not possibly suggest an intent to hinder, delay, or defraud their creditors.

While the amount of the transfers may be a factor for the Court to consider at trial when determining whether there was a scheme to cheat creditors, that inquiry is not appropriate or relevant at this stage of the proceedings. The amount of the transfers is not dispositive for purposes of a Rule 12(b)(6) motion. The Trustee plausibly suggests the right to a legal remedy

and provides the Debtors with fair notice of the claim against them.  Therefore, the Debtors'
Motion to Dismiss is denied as to that portion of Count I.

### c.  Payment of Personal Expenses from Midwest Account -2101

The Trustee next alleges in Count I that the Debtors acted with intent to hinder, delay, or
defraud creditors when they channeled funds for payment of personal expenses to accounts under
names of other individuals.  (Am. Compl. at ¶ 131.)  The Amended Complaint states that the
Debtors did this through Midwest Bank Account -2101, which is jointly held by Kim Ann
Webster-Campbell and her grandmother, Esther Karushis.  (*Id.* at ¶¶ 120-124.)  The Debtors
argue that the transfer of funds to this account did not put those funds beyond the reach of their
creditors and therefore would not constitute a violation of § 727(a)(2)(A).  (Reply in Supp. of
Mot. to Dismiss at p. 4.)

The Court agrees with the Debtors that their creditors would be able to reach the funds
held in this account and, furthermore, that payment of personal expenses from the Debtors'
personal accounts is not a violation of § 727(a)(2)(A).  Therefore, the Court finds that the
Amended Complaint fails to sufficiently plead that paying personal expenses out of an account
jointly held by one of the Debtors resulted in the transfer, removal, destruction, mutilation, or
concealment of property of the Debtors within one year of the Petition Date, conducted with the
requisite wrongful intent.  This portion of Count I relating to the payment of personal expenses
from Midwest Account -2101 is dismissed.

### d.  Transfers Among and Closing of Accounts Held by the Debtors' LLCs

The Trustee next alleges that the Debtors closed bank accounts belonging to OPAR,
Campbell Capital Management, LLC, Campbell Capital Advisors, LLC, Vermillion Riverfront,
LLC, Denmark Ventures, LLC, Thistlewood, LLC, Campbell Income Fund, L.P., and Campbell

International Aviation, LLC, and transferred funds among some of those entities, between January 1, 2010[8] and the Petition Date. (Am. Compl. at ¶¶ 133-153.) The Amended Complaint contends that the Debtors received certain cash distributions upon the closing of those accounts. (*Id.*) The Amended Complaint further asserts that the Debtors closed those accounts with the intent to hinder, delay, or defraud creditors. (*Id.* at ¶ 153.) The Trustee alleges that the resulting movement of funds is a "transfer" of property within the meaning of § 727(a)(2). (*Id.* at ¶ 166.)

As explained above, under Illinois law assets held by the LLCs were not jointly owned by the owner-members of those LLCs. 805 Ill. Comp. Stat. 180/30-1(a). Therefore, the funds in any bank accounts held by the Debtors' LLCs were not property of the Debtors within one year prior to their bankruptcy filing and do not fall within the reach of § 727(a)(2)(A). Because these funds were not the Debtors' property, the actions complained of in this portion of Count I are not prohibited by § 727(a)(2)(A). The Debtors' Motion to Dismiss is granted as to this portion of Count I.

### 2.  Evasion of Service of Process

Count I of the Amended Complaint alleges that the Debtors and OPAR had judgments entered against them by the Illinois state court in 2009. (Am. Compl. at ¶¶ 87, 89, & 91.)[9] According to the Amended Complaint, when the judgment holders attempted to collect on their judgments by serving citations to discover assets on the Debtors from August 2009 through October 2010, the Debtors evaded service of process with the intent to hinder the efforts to collect the judgments against them.[10]  (*Id.* at ¶¶ 92-103.)

---

[8]  The Amended Complaint in paragraph 153 refers to January 1, 2011. This appears to be a scrivener's error.

[9] Count I also refers to the closing of banks in which the Debtors were employed as directors or officers. (Am. Compl. at ¶¶ 68-86.) The Trustee has not stated how the closing of these banks supports an allegation that would give rise to a cause of action under § 727(a)(2)(A). Therefore, the Court will not further address the closing of the banks.

[10] A citation to discover assets is a supplementary proceeding that enables a judgment creditor to "discover assets or income of the debtor not exempt from the enforcement of the judgment" and to compel "the application of non-

The Debtors argue that the allegations in the Amended Complaint are insufficient to state a cause of action under § 727(a)(2)(A) because the only factual allegation the Trustee makes is that the judgment creditors made numerous unsuccessful attempts to serve citations to discover assets on the Debtors. (Reply in Supp. of Mot. to Dismiss at p. 5.) The Trustee concludes from this sole factual allegation that "[b]y evading service of process for more than a year prior to their filing, [the Debtors] intentionally hindered [the creditors'] efforts to collect on their judgments." (Am. Compl. at ¶ 103.) But that is a legal conclusion, not a factual allegation. The Debtors point out that they were under no legal obligation to accept service of the citations and that nothing in the failure of the creditor to effect service establishes concealment of property by the Debtors. (Reply in Supp. of Mot. to Dismiss at p. 5.) The Court agrees.

It is certainly true that, "[i]n determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's 'whole pattern of conduct.'" *Bennett & Kahnweiler Assocs., LLP, v. Ratner (In re Ratner)*, 132 B.R. 728, 731 (N.D. Ill. 1991) (quoting *First Tex. Savs. Assoc., Inc. v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir. 1983)); *see also Costello*, 299 B.R. at 895 (noting that courts can deduce fraudulent intent by examining the totality of facts and circumstances surrounding the transaction). Moreover, the Seventh Circuit has set out "badges of fraud" that, if proven, are evidence of actual fraud.[11] *McWilliams*, 284 F.3d at 791.

However, because the Debtors were under no legal duty to cooperate in accepting service

---

exempt assets or income discovered toward the payment of the amount due under the judgment." 735 Ill. Comp. Stat. 5/2-1402(a) (2012). The purpose of the citation is to assist the judgment creditor in asset discovery and satisfaction of its judgment. *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 622 (7th Cir. 2010).

[11] "The Seventh Circuit has adopted several factors which, if shown, indicate actual fraud: (1) the lack or inadequacy of consideration; (2) the family, friendship, or close relationship between the transferor and transferee; (3) the retention of possession, benefit, or use of the property at issue; (4) the financial condition of the debtor; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the chronology of the events and transactions at issue." *Elliott v. Zamudio (In re Zamudio)*, Bankr. No. 04-05055, Adv. No. 04-02922, 2005 WL 2035969, at *8 (Bankr. N.D. Ill. Aug. 23, 2005) (citing *McWilliams*, 284 F.3d at 791).

of the citations, the mere factual allegation of their lack of cooperation is insufficient to support an inference of, much less to establish, fraudulent intent or concealment of property. Accordingly, this portion of Count I is dismissed.

In sum, the Debtors' Motion to Dismiss with respect to Count I of the Amended Complaint is granted and all claims in Count I are dismissed, with the exception of the allegations relating to Simmons Account -6608 and Simmons Account -3749.

### C.    Count II—11 U.S.C. § 727(a)(2)(B)

Under Count II of the Amended Complaint, the Trustee alleges that the Debtors depleted the funds held in Campbell Income Fund, L.P. and Campbell Fixed Income Fund, LLC in a way that violated § 727(a)(2)(B). The elements under § 727(a)(2)(B) are "substantially the same" as those under § 727(a)(2)(A). *Barber v. Herold (In re Herold)*, Bankr. No. 07-81575, Adv. No. 07-8139, 2008 WL 4855646, at *3 (Bankr. C.D. Ill. Nov. 10, 2008). Unlike § 727(a)(2)(A), however, which relates to a debtor's actions in the year prior to the petition date, § 727(a)(2)(B) addresses a debtor's actions *after* the filing of the petition. *Britton Motor Serv., Inc. v. Krich, (In re Krich)*, 97 B.R. 919, 922 (Bankr. N.D. Ill. 1988) (emphasis supplied). The Amended Complaint alleges three groups of transactions in support of this Count.

### 1.  Decrease in Cash Holdings of RBC Account -7710

First, the Amended Complaint alleges that on October 31, 2010, Campbell Fixed Income Fund, LLC's RBC Wealth Management Account -7710 ("RBC Account -7710") held cash in the amount of $297,960.17. (Am. Compl. at ¶ 175.) As of the same date, equity positions increased the total value of that account to $298,802.63. (*Id.*) By March 31, 2011, RBC Account -7710 held only $41,370.11 in cash. (*Id.* at ¶ 176.) The alleged reason for the decline in value in the account is that the Debtors traded in the account post-petition, primarily to exercise "puts" on the

stock of Central European Distr. Corp. that Campbell Fixed Income Fund, LLC sold post-petition. (*Id.* at ¶ 178.)

### 2. Transfers From RBC Account -3672

Second, the Amended Complaint alleges that on October 31, 2010, the Campbell Income Fund, L.P.'s (as distinguished from the Campbell Fixed Income Fund, LLC discussed above) RBC Wealth Management Account -3672 ("RBC Account -3672) held cash in the amount of $207,186.46, but short positions reduced the net account value to $184,460.80. (*Id.* at ¶ 181.) By March 31, 2011, the Debtors' post-petition exercise of "puts" in the stock of Central European Distr. Corp. reduced the total cash in RBC Account -3672 to $11,396.10. (*Id.* at ¶¶ 182 & 184.)

### 3. Other Post-Petition Transfers

Finally, the Amended Complaint alleges that, in two separate transactions, the Debtors removed funds of the estate or permitted them to be removed, transferred, or lost after the Petition Date. First, on February 14, 2011, an interest payment of $9,200 on securities owned by Campbell Income Fund, L.P. was deposited into an account owned by Campbell Capital Management, LLC. (*Id.* at ¶ 185.) Then, on February 15, 2011, a check for $9,000 payable to Debtor Craig Campbell was issued from that account owned by Campbell Capital Management, LLC. (*Id.* at ¶ 186.) The Amended Complaint alleges that the combined effect of these two transfers was to either remove, or to permit to be removed, transferred, or lost, funds that are property of the estate but were held by Campbell Income Fund, L.P. and Campbell Fixed Income Fund, LLC. (*Id.* at ¶ 187.)

### 4. Count II Analysis

The Debtors do not dispute the facts alleged in this Count of the Amended Complaint.

Rather, they argue that Count II should be dismissed because the funds transferred out of Campbell Fixed Income Fund, LLC and Campbell Income Fund, L.P. were not property of the estate. For the reasons discussed at the outset of this Opinion, the Debtors are correct that the transactions complained of in Count II do not involve property of the estate.

However, the post-petition diminution of value of the subsidiary LLCs did decrease the estate's equity interest in OPAR. The question therefore becomes whether the reduction of the estate's equity interest in OPAR, occasioned by the Debtors' post-petition securities trades, comes within the four corners of § 727(a)(2)(B). This Court holds that it does not.

To be denied a discharge under § 727(a)(2)(B), a debtor must have "[1] transferred, [2] removed, [3] destroyed, [4] mutilated, or [5] concealed" property of the estate after the date of the petition. 11 U.S.C. § 727(a)(2). The only property of the estate properly alleged in Count II to have been affected is the estate's equity interest in OPAR. Nothing in Count II suggests that that reduction in equity value was the result of mutilation or concealment of property of the estate, and the only transfers that were alleged in Count II involved assets that the Court has already concluded were not property of the estate. Therefore, unless the reduction of the estate's equity interest in OPAR was the result of removal or destruction of property of the estate, the Trustee has failed to state a claim in Count II under § 727(a)(2)(B).

The Court holds that Count II fails to properly allege that the reduction in value of the estate's equity interest in OPAR was the result of either removal or destruction of property of the estate. Both "destruction" of property and "removal" of property refer only to acts affecting tangible objects. 6 A. Resnick & H. Sommer, *Collier on Bankruptcy*, ¶ 727.02[6][a] at 727-26 (16th ed. 2012). The estate's equity interest in OPAR is not a tangible object. Moreover, transfers of assets from Campbell Income Fund, L.P. to Campbell Capital Management, LLC

and subsequently to Debtor Craig Campbell in fact made the funds more accessible to creditors. Therefore, without needing to opine on whether the post-petition transfers described in Count II might give rise to a right to relief under some other provision of the Bankruptcy Code, the Court holds that Count II does not state a claim for relief under § 727(a)(2)(B). The Debtors' Motion to Dismiss is therefore granted with respect to Count II.

### D. Count III—11 U.S.C. § 727(a)(4)(A)

In Count III of the Amended Complaint, the Trustee alleges that the Debtors violated § 727(a)(4)(A) by knowingly undervaluing real properties and foreign automobiles belonging to the Debtors and failing to disclose that they closed certain bank accounts. Section 727(a)(4)(A) bars a debtor's discharge if he knowingly and fraudulently makes a false oath in connection with the case. In order to prevail, a creditor must establish five elements under § 727(a)(4)(A): (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Stamat*, 635 F.3d at 978.

Under this statute, the creditor first must establish that the debtor made a statement under oath. A debtor's schedules are statements under oath for purposes of § 727(a)(4). *Rutili v. O'Neill (In re O'Neill)*, 468 B.R. 308, 327 (Bankr. N.D. Ill. 2012); *In re Cole*, 378 B.R. 215, 221 (Bankr. N.D. Ill. 2007).

Second, the creditor must show that the debtor's statements were false. Whether a debtor made a false oath within the meaning of § 727(a)(4)(A) is a question of fact. *Costello*, 299 B.R. at 899; *Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein)*, 272 B.R. 463, 477 (Bankr. N.D. Ill. 2001). A false oath may include a knowing and fraudulent omission. *Rafool v. Wilson (In re Wilson)*, 290 B.R. 333, 337 (Bankr. C.D. Ill. 2002); *Krich*, 97 B.R. at 923 ("Filing

of false schedules with material omissions or misrepresentations with an intent to mislead creditors and the trustee as to a debtor's actual financial condition constitutes a false oath under section 727(a)(4)(A).").

Third, the creditor must establish that the debtor knowingly made a false statement or omission.

Fourth, the creditor must prove that the debtor made a false statement with fraudulent intent. "Intent to defraud involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). To find the requisite degree of fraudulent intent, a court must find that the debtor knowingly intended to defraud or engaged in behavior that displayed a reckless disregard for the truth. *In re Yonikus*, 974 F.2d 901, 905 (7th Cir 1992); *In re Bailey*, 147 B.R. 157, 164-65 (Bankr. N.D. Ill. 1992) (citing *Yonikus*, 974 F.2d at 901). Direct evidence of intent to defraud may not be available. *Costello*, 299 B.R. at 900. Thus, the requisite intent under § 727(a)(4)(A) may be inferred from circumstantial evidence or by inference based on a course of conduct. *See Yonikus*, 974 F.2d at 905; *Costello*, 299 B.R. at 900; *Brandt v. Carlson (In re Carlson)*, 231 B.R. 640, 655 (Bankr. N.D. Ill. 1999).

Finally, the creditor must show that a false statement related materially to the bankruptcy case. A debtor's false oath must relate to a material matter before it will bar a discharge in bankruptcy. *Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1290 (7th Cir. 1987).

### 1. The Debtors' Scheduled Real Property Values

In this Count, the Amended Complaint alleges that the Debtors violated § 727(a)(4)(A) when they knowingly scheduled the following false property valuations in their schedules: (1) that the real property they owned at 15684 East 2200 North Road, Danville, Illinois (which the

Trustee alleges had a fair market value between $600,000 and $625,000) was worth $289,000 (Am. Compl. at ¶¶ 193 & 196); (2) that the value of their interest in real property located at 1124 Wilkin Road, Danville, Illinois (which the Trustee alleges was worth $95,000) was $5,000 (*id.* at ¶¶ 194 & 197); and (3) that the value of their interest in real property located at 1126 Wilkin Road, Danville, Illinois (which the Trustee alleges was worth $150,000) was $52,000 (*id.* at ¶¶ 195 & 198).

In response, the Debtors contend that the Amended Complaint fails to allege that a false oath was made because the Trustee has not set forth any facts that indicate that the Debtors' estimates of the values of the real property were not made in good faith. (Mot. to Dismiss at ¶ 19.) The Court disagrees. By alleging significant differences between the scheduled values and the alleged market values of these properties, the Amended Complaint has sufficiently alleged that the listed values were in fact false.[12] These allegations plausibly suggest that the Debtors made a false oath in violation of § 727(a)(4)(A).

In support of their position, the Debtors cite *Cohen v. Latorre (In re Latorre)*, 164 B.R. 692 (Bankr. M.D. Fla. 1994), a case in which the creditor sought the denial of the debtor's discharge, alleging that he inaccurately valued assets. The court in that case held that, even though the debtor understated the value of his business stock on his schedules, that understatement would not be grounds for denial of a discharge because the creditor had failed to produce any evidence that the debtor knowingly understated the value. *Id.* at 696. What

---

[12] Traditionally, allegations of fraud cannot be pleaded "upon information and belief." *Pirelli*, 631 F.3d at 442-43. "[H]owever: the practice is permissible, so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Id.* at 443 (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir.1992)). The Court finds that the Trustee's references to the Debtors' Schedule A sufficiently allege the who, what, when, where, and how. Because the Trustee has no access to the workings of the Debtors' minds and has supplied reasonable grounds for his suspicions about the property values, the Trustee's allegations meet the requirements set forth above. Though more evidence about the Debtors' fraudulent intent will be required when this issue is decided on the merits, this Court finds that the Trustee has pleaded sufficient facts to meet the heightened particularity requirements of Rule 9(b).

distinguishes *Latorre* from this case, however, is that the *Latorre* decision was made on the merits of the case, after an evidentiary hearing. By contrast, at the pleading stage in which we currently address the Amended Complaint, the test is not whether the Trustee ultimately will be able to prove that the Debtors knowingly understated the value of the real and personal property, but whether the Amended Complaint fairly gives notice of a plausible cause of action under § 727(a)(4)(A). The Court finds that it does.

Therefore, with respect to portions of Count III alleging undervaluing of real estate, the Debtors' Motion to Dismiss is denied.

### 2. The Debtors' Scheduled Automobile Values

The Amended Complaint also alleges that the Debtors violated § 727(a)(4)(A) when they knowingly stated in their Schedules that the value of a 1986 Mercedes SDL they owned was $500 and that the value of their 1987 Alfa Romeo was also $500. (Am. Compl. at ¶ 199.) The Trustee alleges that these valuations were intentionally understated because, between October 1, 2009 and the Petition Date, the Debtors spent at least $10,249 on repairs to these vehicles. (*Id.* at ¶ 200.) The Amended Complaint alleges that the Debtors knowingly undervalued the automobiles, thereby violating § 727(a)(4)(A). (*Id.* at ¶ 204.)

The Court finds that, with respect to the two vehicles, the Trustee has pleaded sufficient facts for that portion of Count III to survive a Rule 12(b)(6) motion to dismiss. As stated above, a complaint need only contain sufficient facts so that the defendant would have notice of a claim against him with plausible grounds for relief. *Iqbal*, 556 U.S. at 677-78; *Twombly*, 550 U.S. at 555. The fact that, in the year prior to filing for bankruptcy, the Debtors spent ten times the scheduled value of these vehicles on repairing them is sufficient to give the Debtors notice of what is being alleged against them and to state plausible grounds for a legal remedy under §

727(a)(4)(A).

The Debtors' Motion to Dismiss is denied with respect to the valuation of the automobiles in Count III.

### 3. Pre-Petition Closing of the Debtors' Bank Accounts

Finally, the Trustee alleges that the Debtors did not disclose in their Statement of Financial Affairs that they had closed certain bank accounts in which they had an interest within the year preceding the Petition Date. (Am. Compl. at ¶¶ 202 & 205.) On June 30, 2010, the Debtors closed an account owned by Denmark Ventures, LLC. (*Id.* at ¶ 141.) Thereafter, on July 9, 2010, the Debtors closed accounts owned by Campbell Capital Advisors, LLC; Vermilion River Front, LLC; Thistlewood, LLC; Campbell Income Fund, L.P.; and Campbell International Aviation, LLC. (*Id.* at ¶¶ 137, 139, 143, 145, & 150.) As explained above, although the Debtors' interests in their LLCs do indeed become property of the estate, the assets owned by those LLCs are not property of the LLCs' owner-members and thus are not property of the estate, unless and until the Trustee takes the necessary steps under Illinois corporate law to bring that property into the estate. Because the Trustee has not yet done so, the Debtors were under no obligation to disclose the closing of those accounts. Thus, as a matter of law, this portion of Count III must be dismissed.

### E.    Count V—Surcharging the Debtors' Exempt Property

Under Count V of the Amended Complaint, the Trustee seeks to surcharge the Debtors' exempt property to the extent that the estate suffered losses from post-petition trades made by the Debtors. (Am. Compl. at ¶¶ 218-224.) The Debtors contend that this Count should be dismissed as a matter of law because surcharging a debtor's exempt property is not an available remedy in the Seventh Circuit.

Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke, etc. v. Williams*, 490 U.S. 319, 326 (1989). If "as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." *Id.* at 327 (internal citation omitted); *see also Oakland Ridge Homeowners Ass'n v. Braverman (In re Braverman)*, 463 B.R. 115, 118 (Bankr. N.D. Ill. 2011). In other words, dismissal of a claim is appropriate on the basis of a dispositive issue of law when no construction of the factual allegations will support the claim. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

The Seventh Circuit has not addressed directly the issue of surcharge with respect to a debtor's exempt assets. Other circuit courts, however, have addressed the issue and are divided. *See Latman v. Burdette*, 366 F.3d 774, 785 (9th Cir. 2004) (allowing surcharge of exempt assets); *In re Scrivner*, 535 F.3d 1258, 1265 (10th Cir. 2008) (finding that the remedy of surcharge exceeds the court's equitable powers under 11 U.S.C. § 105(a)). The Debtors argue that surcharge is not a remedy independently provided by the Bankruptcy Code and that the Seventh Circuit would not permit a bankruptcy court to create a new remedy such as surcharge solely from its powers under § 105(a), citing *In re UAL Corp.*, 412 F.3d 775, 778 (7th Cir. 2005), *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004), and *Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986).

The Court agrees. Because the Seventh Circuit has ruled that § 105(a) can only be used to enforce substantive rights provided elsewhere by the Bankruptcy Code, and the Trustee has not pointed to any other provision of the Code for the right to surcharge exempt property, the Court grants the Debtors' Motion to Dismiss Count V of the Amended Complaint.

## V. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Motion to Dismiss. Portions of Count I, all of Count II, portions of Count III, and all of Count V are dismissed without prejudice and the Motion to Dismiss is otherwise denied. The Trustee is given leave to file a second amended complaint on or before August 10, 2012. This adversary proceeding is set for a status hearing on August 24, 2012 at 10:00 a.m.

ENTERED:

DATE: *July 2, 2012*

*Donald R. Cassling*

**Donald R. Cassling**
**United States Bankruptcy Judge**